UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RON DIXON, As Conservator for Beatrice Jiggetts,<br><br>   Plaintiff,<br><br>v.<br><br>MIDLAND MORTGAGE CO.,<br><br>   Defendant. | Civil Action No. 1:09-cv-01789 (RLW) |

**MEMORANDUM OPINION[1]**

This matter is before the Court on the Motion for Partial Summary Judgment (Docket No. 40) filed by Plaintiff Ron Dixon ("Dixon" or "Plaintiff"), as conservator for Beatrice Jiggetts, and the Motion for Summary Judgment (Docket No. 41) filed by Midland Mortgage Company ("Midland" or "Defendant"). In his First Amended Complaint, Plaintiff asserts three causes of action against Midland. Count I alleges trespass, Count II alleges breach of contract, and Count III alleges wrongful eviction. Plaintiff has moved for partial summary judgment as to the wrongful eviction claim only; Defendant has moved for summary judgment as to all three counts. See Fed. R. Civ. P. 56. For the reasons set forth briefly below[2], Defendant's motion for

---

[1] This is a summary opinion intended for the parties and those persons familiar with the facts and arguments set forth in the pleadings; not intended for publication in the official reporters.

[2] Rule 56(a) was amended in 2010 to require the trial court to "state on the record the reasons for granting or denying the motion [for summary judgment]." The Advisory Committee Notes to the amendment point out that "[t]he form and detail of the statement of reasons are left to the court's discretion" and that "[t]he statement on denying summary judgment need not address every available reason." Prior to the 2010 amendments, detailed rulings on summary judgment motions were generally not required by the federal rules or by the law of our Circuit, even when granting summary judgment, since the trial court makes no actual factual findings and the legal ruling is reviewed *de novo*. See, e.g., Summers v. Department of Justice, 140 F.3d 1077, 1079-80 (D.C. Cir. 1998) (stating general rule, but creating an exception for Freedom of Information Act cases due to particular statutory requirements); Randolph-Sheppard Vendors of America, Inc. v. Harris, 628 F.2d 1364, 1368 (D.C. Cir. 1980); Gurley v. Wilson, 239 F.2d 957, 958 (D.C.

summary judgment is granted, and Plaintiff's motion for partial summary judgment shall be denied.

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing Fed. R. Civ. P. 56(c) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A genuine issue of material fact exists if the evidence, viewed in the light most favorable to the non-movant, "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. A party, however, must provide more than "a scintilla of evidence" in support of its position; the quantum of evidence must be such that a jury could reasonably find for the moving party. Id. at 252.

As an initial matter, the Court notes that it expects parties to adhere to Local Civil Rule 7(h)(1) when briefing motions for summary judgment. See Burke v. Gould, 286 F.3d 513, 519 (D.C. Cir. 2002) (noting that the District of Columbia circuit "has long upheld strict compliance with the district court's local rules on summary judgment when invoked by the district court). In support of its motion for summary judgment, Defendant submitted a Statement of Material Facts as to Which There is No Genuine Issue ("Statement") in compliance with Rule 7(h)(1). Defendant's statement was detailed and listed twenty-five individual facts which it contends are not in dispute. Plaintiff's opposing statement, however, was not responsive to Defendant's statement. Plaintiff made no attempt to object to any of the facts listed in Defendant's statement and Plaintiff did not respond specifically to Defendant's individual statements. The fact that Plaintiff's previously filed summary judgment motions were stricken for failing to comply with

---

Cir. 1956). See generally, WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL 3d § 2575 (2008).

Rule 7(h)(1) makes Plaintiff's behavior especially egregious here. (See May 2, 2011 Order, Docket No. 34). Moreover, the Court admonished the parties to ensure that all future summary judgment filings comply with the Federal Rules of Civil Procedure and the local rules of this Court. Id. Accordingly, the Court will deem Defendant's statement of material facts not in dispute as conceded by Plaintiff. See Twist v. Meese, 854 F.2d 1421, 1424 (D.C. Cir. 1988) (holding that a district court does not abuse its discretion in accepting as true the movant's properly supported statement of material facts not in dispute where the opposing party failed to submit a counterstatement).

Count I

In Count I of the Amended Complaint, Plaintiff alleges that on or about July 15, 2009, Midland broke into Plaintiff's house, changed the locks on the doors, and caused damage to the Plaintiff's home. (Am. Compl. ¶ 19). Plaintiff further alleges that Midland's entry was "without Plaintiff's consent, and without just cause, and/or legal justification" and therefore constitutes a trespass. Id. at ¶¶ 19-20.

Under District of Columbia law "[a] trespass is an unauthorized entry onto property that results in interference with the property owner's possessory interest therein." Sarete, Inc. v. 1344 U Street Ltd. Partnership, 871 A.2d 480, 490 (D.C. 2005) (quoting Richard R. Powell, POWELL ON REAL PROPERTY, § 64A.02[1] at 64A-16, at 64A-16 (Michael A. Wolf ed.2000)). Thus, to prevail at trial, Plaintiff must prove that the Defendant made an unauthorized entry onto Plaintiff's property that interfered with Plaintiff's possessory interest.

Nonetheless, even if the Defendant's actions interfered with Plaintiff's possessory interest, a Defendant entering a property in the public interest is not liable for trespass, because Defendant's entry is privileged. See Richard R. Powell, POWELL ON REAL PROPERTY, §

64A.02[2]. Courts have recognized this privilege in allowing a landlord—analogous here to a mortgagee—to enter a vacant property to secure it and prevent theft and vandalism. See Hinton v. Sealander Brokerage Co., 917 A.2d 95, 102 (D.C. 2007); Restatement (Third) of Property: Mortgages § 4.1(c) (1997) (providing that abandonment of the property by the mortgagor gives the mortgagee the right to take possession prior to foreclosure, and noting that public policy clearly supports mortgagee possession in such circumstances); cf. Stevens, Ed., STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA § 10.03[1] (explaining that the law considers a person to be lawfully upon the landowner's property if that person is there for the benefit of both himself and the landowner). The undisputed facts show that the last mortgage payment on the property was made in December of 2008. It is also undisputed that Defendant sent Chesley and Jiggets two sets notices of default in January 2009 and February 2009 and received no response. The undisputed facts show that when Midland sent its agent, Safeguard Properties, LLC ("Safeguard"), to inspect the property on March 20, 2009, Safeguard found the property vacant and vandalized, and reported that the utilities had been cut off, the grass was not cut, and debris was seen in the house, including broken glass and garbage. The undisputed facts also show that when Safeguard returned to the property on March 25, 2009, Safeguard found additional vandalism and extensive damage – photos taken that date show roof damage, water damage, broken sinks, toilets and bathtubs, a broken water heater, broken glass, and trash and debris strewn throughout the house – and Safeguard changed the locks to secure the property.[3]

In light of the condition of the property upon inspection, and the fact that that the property was being vandalized, Midland's initial perception that the property had been

---

[3] Whether the locks on the property were changed on March 25, 2009 or mid-2009 (as Plainitff suggests) is immaterial, because the undisputed fact is that the house was damaged and uninhabitable and the locks were changed to prevent further damage to the property due to vandalism and the elements.

abandoned was reasonable. Moreover, it was proper for Midland—after finding evidence of extensive vandalism—to change the locks to allow for future access to the property while preventing future vandalism, especially since it was not known whether the persons responsible for damaging the house had access to a key to the house. Based on the undisputed facts, Plaintiff cannot rebut the showing that Midland's entry onto the property—which was to the benefit of both parties—was not privileged.

Even if Plaintiff had a valid trespass claim, Plaintiff has not proven damages. It is undisputed that Plaintiff has provided no admissible evidence establishing actual or consequential damages caused by Midland. Plaintiff alleges that Chesley not able to access the property when he tried to prepare the property for a potential buyer on August 1, 2009. However, Plaintiff's Amended Complaint confirms that, after requesting access to the property on August 5, 2009, Midland provided Plaintiff's counsel with the combination to the locks on the property on August 11, 2009. (Am. Compl. ¶ 12). Notably, there is no evidence that Plaintiff made any effort to sell the house or to remove the personal property from the house in the nearly four months that passed from the time he concedes that he received the combination to the locks to the time the property was eventually sold at foreclosure auction. (Dixon Dep. P. 47 Lines 7-15). Therefore, even if Plaintiff established any damages, he completely failed to mitigate his damages.

Count II

With respect to Plaintiff's breach of contract claim, Midland argues that summary judgment should be granted for two reasons: (1) there was no valid contract supported by consideration; and (2) even if there was a valid contract, there is no evidence of any breach by Midland.

5

Plaintiff's breach of contract claim arises out of the same set of facts as his trespass claim. The breach of contract claim as pleaded in Plaintiff's Amended Complaint alleges that an agreement was made on July 16, 2009 to postpone the foreclosure until August 19, 2009 to allow Plaintiff to sell the property before foreclosure. (Am. Compl. ¶ 10). Plaintiff further alleges that when Midland entered Jiggetts' home and changed the locks, Midland breached its contract with Plaintiff that it would take no action on the property before the foreclosure sale set for August 19, 2009. (See Am. Compl. ¶¶ 10, 22-23; see also Plt.'s Resp to Interrog. No. 6).

Plaintiff has produced no evidence showing the specific terms of this agreement and has offered no evidence that any agreement, oral or otherwise, contained a term prohibiting Midland from changing the locks on the property. Indeed, Plaintiff concedes this fact.[4] Thus, Plaintiff's breach of contract theory is that Midland—by changing the locks and hampering Plaintiff's access to the property—rendered Plaintiff's performance impossible by preventing Plaintiff from selling the property before the foreclosure sale.

However, the undisputed facts show that Plaintiff's inability to sell the property before the foreclosure sale was not a result of any action by Defendant, but was instead the result of Plaintiff's lack of action. It is undisputed that Plaintiff made no effort to market the property. Plaintiff did not place an advertisement in a newspaper. Plaintiff did not hire a real estate agent. At his deposition, Plaintiff could not recall the name or a single corroborating detail regarding the one potential buyer that he asserted was interested in the property in July or August of 2009. It is also undisputed that Plaintiff made absolutely no effort to sell the property in the four months after Plaintiff concedes that Midland provided him with the combination to the locks to

---

[4] At the hearing on the motions for summary judgment, Plaintiff's counsel represented to the Court that the contract at issue in Count II of the Amended Complaint is an oral contract. When asked whether Plaintiff had presented any evidence of this oral contract in any pleading in this case, Plaintiff's counsel conceded that he had presented none.

6

the house. The fact that Plaintiff did not petition the District of Columbia Superior Court's Probate Division for permission to sell the home—as required by his Letters of Conservatorship entered in evidence in this case—further demonstrates that Plaintiff was never close to consummating a sale of the property.[5] Moreover, in a February 24, 2010 pleading filed in the Superior Court, Plaintiff stated that:

> [o]n or about January of 2010 Midland mortgage company, who also paid the insurance and property taxes for the property on Olive Street N.E. sold the property to a third party. *This occurred without the knowledge or consent of Ms. Jiggetts* or the other co-owner of the property, Mr. Charles Chesley.

(Mot. to Vacate Summ. Hr'g at 1, In Re: Beatrice Jiggetts, No. 2006-INT-00046 (D.C. Super. Sept. 24, 2010)) (emphasis added). This statement, in addition to being disingenuous, to put it charitably, further undermines a breach of contract theory that hinges upon Plaintiff's active efforts to sell the property before the foreclosure sale.[6] In sum, because the undisputed facts show that Plaintiff's failure to sell the property was unrelated to any action by Midland, Plaintiff has created no genuine issue of material fact with respect to his breach of contract claim. See Narvaez v. Wilshire Credit Corp., 757 F. Supp. 2d 621, 630 (N.D. Tex. 2010) (finding that defendant did not breach contract where plaintiff's nonperformance was not the result of any action by defendant); Boomhower, Inc. v. Lavine, 151 F. Supp. 563, 568 (D.D.C. 1957) (stating that there is no breach of contract if plaintiff would not have performed, despite defendant's actions).

---

[5] Because Plaintiff's authority to bring this case and to sell this house originates from the Superior Court conservatorship proceeding, the Court reviewed and takes judicial notice of the docket and pleadings in that matter.

[6] These questionable representations, as well as and the failure to undertake diligent efforts to safeguard Ms. Jiggetts' home and personal property and to market and sell the house, are quite troubling and merit further investigation of Plaintiff and Plaintiff's counsel by the appropriate authorities.

Count III

In Count III, Plaintiff alleges that on or about the date of the foreclosure sale, Midland evicted Jiggetts when Midland entered the property and removed Jiggetts' belongings. (Am. Compl. ¶ 28). Plaintiff contends that the alleged eviction was wrongful because it constitutes self-help in violation of the laws of the District of Columbia. Id. ¶ 30. In order to prevail on his wrongful eviction claim, Plaintiff must prove that Defendant performed "some act of a permanent character with the intention and effect of depriving the [Plaintiff] of the enjoyment of the demised premises or a part thereof." Hinton, 917 A.2d at 101.

The law is clear in this jurisdiction that a landlord is prohibited from using self-help to evict a tenant and must proceed instead by using the summary process in the Landlord and Tenant Branch of the Superior Court. Mendes v. Johnson, 389 A.2d 781, 783-87 (D.C. 1978) (en banc) (landlord's common law right of self-help eviction by removing tenant's belongings from premises abrogated by exclusive statutory remedy mandating reliance on legal process). Plaintiff, however, has produced no evidence that Midland removed Jiggetts' belongings. Instead, Plaintiff cites to Midland's admissions that, prior to selling the property, it did not obtain: 1) a notice to quit pursuant to D.C. Code § 42-3203; 2) a judgment of possession pursuant to D.C. Code § 16-1503; and 3) a writ of restitution pursuant to Superior Court Landlord and Tenant Rule 16. However, Plaintiff's reliance on Midland's admissions is misplaced, because these are statutory requirements in order to *obtain possession* of property. See Democratic Cent. Committee of District of Columbia v. Washington Metropolitan Transit Com'n, 21 F.3d 1145, 1150-51 (D.C. Cir. 1994) (holding that District of Columbia law requires that mortgagees take proper affirmative legal steps to acquire possession of mortgaged property upon default). The law does not require Midland, as a mortgagee selling property pursuant to a

8

power of sale, to comply with these statutory requirements. Id. at 1155. Thus, Midland's admissions lend no support to Plaintiff's claims. Moreover, Plaintiff has offered no competent evidence that Midland removed Jiggetts' belongings or took possession of the property. Based on the undisputed facts, the Court shall grant summary judgment for the Defendant on Count III.[7]

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is denied. Defendant's Motion for Summary Judgment is granted as to all claims, and, accordingly, Plaintiff's Amended Complaint will be dismissed with prejudice. An Order accompanies this Memorandum.

SO ORDERED.

Date: September 29, 2011

Digitally signed by Judge Robert L. Wilkins
DN: cn=Judge Robert L. Wilkins, o=U.S. District Court, ou=Chambers of Honorable Robert L. Wilkins, email=RW@dc.uscourt.gov, c=US
Date: 2011.09.29 14:13:17 -04'00'

ROBERT L. WILKINS
United States District Judge

---

[7] To the extent that Plaintiff has attempted in post-discovery briefing and at oral argument to change his wrongful eviction theory by alleging that Defendant took possession of the property before the foreclosure sale, the Court exercises its discretion to preclude such a change. This change of theory is inconsistent with Plaintiff's complaint, expert testimony and actions during discovery, and allowing a change now is inappropriate and prejudicial to the Defendant. Even if the Court were to consider Plaintiff's alternative theory, it would fail, as it finds no support in the undisputed facts for the reasons set forth in the discussion of the trespass and contract claims.